**ACTION, INC., Petitioner,**

v.

**Raymond J. DONOVAN, Secretary, United States Department of Labor, Respondent.**

**No. 84–1826.**

United States Court of Appeals, Tenth Circuit.

April 30, 1986.

James L. Feldesman and Ronald Kreisman of Boasberg, Klores, Feldesman & Tucker, Washington, D.C., for petitioner.

Vincent Costantino, Office of the Solicitor, Dept. of Labor, Washington, D.C. (Francis X. Lilly, Sol. of Labor, William H. DuRoss, III, Associate Sol. for Employment and Training, and Harry L. Sheinfeld, Counsel for Litigation with him on the briefs), for respondent.

Before HOLLOWAY, Chief Judge, MOORE and TACHA, Circuit Judges.

TACHA, Circuit Judge.

This is an appeal from a decision of the Secretary of Labor holding that Action, Inc. (Action) improperly expended Comprehensive Employment and Training Act (CETA) funds. Although CETA has been repealed, jurisdiction is conferred on this court by 29 U.S.C. § 1591(e), which continues the grant of jurisdiction originally conferred by 29 U.S.C. § 817(a) (repealed 1982).[1] The decision of the Secretary is

---

1. CETA was initially enacted in 1973 as Pub.L. No. 93–203, 87 Stat. 839, and substantially

entitled to substantial deference. We may overturn his decision only if his factual determinations are not supported by substantial evidence, 29 U.S.C. § 817(b);[2] accord 5 U.S.C. § 706, or the final decision is arbitrary and capricious, an abuse of discretion or otherwise not in accordance with law, 5 U.S.C. § 706; *Baltimore Gas & Elec. Co. v. Natural Resources Defense Council,* 462 U.S. 87, 97–98, 103 S.Ct. 2246, 2252–53, 76 L.Ed.2d 437 (1983); *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971). For the reasons set forth below, we affirm the Secretary's decision in part and vacate and remand in part for further proceedings consistent with this opinion.

The Cleveland County Board of Commissioners, Cleveland County, Oklahoma (County), received CETA grants from the United States Department of Labor (DOL) to conduct job training programs. The County subcontracted with Action, an Oklahoma nonprofit corporation, to operate the CETA programs. On January 15, 1981, the DOL's Office of Inspector General issued a report of its audit of Action for the period from October 1, 1978, through December 31, 1979. On the basis of the report, a DOL Grant Officer disallowed a number of Action's costs as improper uses of CETA funds and issued his Final Determination against the County for these amounts. Action requested a hearing before an Admin-

istrative Law Judge (ALJ). After the hearing, the ALJ issued a Decision and Order affirming the Grant Officer's disallowances. The ALJ, however, ordered Action rather than the County to pay the amount of the disallowances.

Action filed an appeal with the Secretary and a Petition for Reconsideration with the ALJ. In these filings, Action raised new challenges to the disallowances it had contested at the hearing. Since the Secretary did not modify or vacate the ALJ's Decision and Order within thirty days, it became the final decision of the Agency.[3]

Action timely filed its Petition for Review with this court.[4] Action asks this court to review the disallowance of costs [5] for (1) office space rented by Action from a local county industrial authority and (2) job services provided for three participants.[6] Action also contends the Secretary should have exercised his discretion to waive repayment of disallowed costs and requests remand to the Secretary for this purpose. Finally, Action argues liability should be imposed on the County rather than on Action and requests remand to the Secretary for determination of this issue.

### I.

Before we address the substantive questions Action raises, we must consider a procedural issue raised by the Secretary. The Secretary argues that Action cannot

---

amended in 1978 by Pub.L. No. 95–524, 92 Stat. 1909. CETA was repealed in 1982, Pub.L. No. 97–300, 96 Stat. 1357, and replaced by the Job Training Partnership Act (JTPA), 29 U.S.C. § 1501 *et seq.* Under JTPA, 29 U.S.C. § 1591(e), CETA as amended still applies to cases pending on the date of enactment of JTPA (October 13, 1982).

2. 29 U.S.C. § 817(b) states that "[t]he findings of fact by the Secretary, if supported by substantial evidence, shall be conclusive, but the court, for good cause shown, may, in whole or in part, set aside the findings of the Secretary or remand the case ... to take further evidence, and the Secretary may thereupon make new or modified findings of fact and may modify the previous action, and shall certify to the court the record of the further proceedings."

3. 20 C.F.R. § 676.91(f) states that "[t]he decision of the Administrative Law Judge shall become

the final decision of the Secretary unless the Secretary modifies or vacates the decision within 30 days after it is served."

4. Action then withdrew its Petition for Reconsideration as moot.

5. CETA regulations use the term "costs" to describe monetary outlays, such as rent payments, that laymen generally refer to as expenditures. For consistency, we will use the term "costs" in this opinion.

6. The ALJ's Decision and Order also disallowed the salary of Action's Fiscal Officer. Action appeals this disallowance. We do not address this issue because the Secretary has conceded on appeal and now allows this cost. Brief for Respondent at 5.

raise issues in this court that it did not raise in the hearing before the ALJ.[7] We disagree.

Appellate courts ordinarily consider only those issues raised below. *Quechan Indian Tribe v. United States Dep't of Labor,* 723 F.2d 733, 735, n. 3 (9th Cir.1984); *Franklin County Employment and Training Admin. v. Donovan,* 707 F.2d 41, 44–45 (2d Cir.1983); *Inter-Tribal Council of Nevada v. United States Dep't of Labor,* 701 F.2d 770, 770–71 (9th Cir.1983). When an administrative agency is entrusted with responsibility for decision making, all evidence and arguments relevant to the issues raised before that agency should be presented to the agency to give it the opportunity to carry out its responsibility. *Hormel v. Helvering,* 312 U.S. 552, 556, 61 S.Ct. 719, 721, 85 L.Ed. 1037 (1941). To preserve issues for review by the courts, objections to agency proceedings should be made while the agency still has an opportunity for correction. *United States v. L.A. Tucker Truck Lines,* 344 U.S. 33, 37, 73 S.Ct. 67, 69, 97 L.Ed. 54 (1952). This rule prevents duplicative proceedings and unnecessary appeals. *Id.*

In this case, Action did not raise its arguments for the first time before this court; rather, Action raised them at the administrative level in its Petition for Reconsideration and appeal to the Secretary. The Secretary conceded at oral argument that the CETA regulations do not set forth a clear procedure for appeal to the Secretary of an ALJ's decision. In the absence of any clear provision regarding the procedure and timing for putting forth arguments, we must decide whether raising the arguments at this stage of the administrative proceed-

ings gave the DOL adequate opportunity to correct any error. It appears that under the CETA regulations the DOL could have considered the issues presented in Action's appeal and Petition for Reconsideration. The CETA regulations provide that the ALJ's decision is final only if the Secretary does not act within thirty days. During this thirty-day period, the Secretary has broad discretion to modify or vacate the ALJ's decision.[8]

Despite the Secretary's concession that the CETA regulations do not provide a clear procedure for appeal of an ALJ's decision, he contends, citing 20 C.F.R. § 676.88(f),[9] that Action cannot raise new arguments after the hearing before the ALJ. 20 C.F.R. § 676.88(f) requires a complainant to identify provisions in the Grant Officer's Final Determination upon which a hearing before an ALJ is requested. The regulation provides that provisions not identified in the request for a hearing are considered resolved and not subject to review. The language of this regulation requires a claimant to identify the disallowances he contests; it does not require the claimant to set forth his legal arguments. While this regulation precluded Action from contesting any disallowances not specified in its request for a hearing before an ALJ, it did not preclude Action from raising new legal arguments concerning timely contested disallowances in its appeal to the Secretary and Petition for Reconsideration.

Action raised its arguments prior to DOL's final decision. DOL therefore had an opportunity to consider them and to change the decision of the ALJ. Under

---

**7.** The Secretary raises this procedural challenge regarding the following issues: (1) whether DOL applied the wrong regulations in determining whether Action's rent payments should be allowed, (2) whether the Secretary should have considered waiving recoupment, and (3) whether Action or the County should ultimately be liable for disallowed costs.

**8.** See note 3, *supra.*

**9.** 20 C.F.R. § 676.88(f) provides that "[w]ithin 20 days of receipt of the Grant Officer's dismissal of the complaint or of the Grant Officer's

final determination, any affected recipient ... may request a hearing by filing a request for hearing with the Chief Administrative Law Judge.... The request for hearing shall be accompanied by a copy of the Grant Officer's final determination or dismissal of the complaint and shall specifically state those provisions of the determination upon which a hearing is requested. Those provisions of the determination not specified for hearing, or the entire determination when no hearing has been requested, shall be considered resolved and not subject to further review."

these circumstances, we find that Action has not waived these arguments.[10]

## II.

The Secretary disallowed Action's rent payments to the Cleveland County Industrial Authority as an improper use of CETA funds. Action alleges that the DOL applied the wrong regulations in determining whether the rent payments should be allowed. CETA regulations specify application of cost principles to determine whether a grant recipient's costs will be allowed. Different cost principles apply depending on whether the recipient is a commercial or nonprofit organization, an educational institution, or a state or local government.[11] Whether Action's rent payments should be allowed depends upon identification of the appropriate cost principles to be applied to Action.

Action contends that it is a nonprofit organization. Accordingly, Action argues that the cost principles for nonprofit organizations apply and the Secretary erred in applying the cost principles for state and local governments. Under the cost principles for state and local governments, Action would not be allowed rental costs for space in a public building.[12] 41 C.F.R. § 1–15.7 *et seq.* Under the cost principles for nonprofit organizations, however, Action would be allowed such costs. 41 C.F.R. § 1–15.2 *et seq.* The Secretary ap-

plied the cost principles for state and local governments without explaining why they would apply rather than the cost principles for nonprofit organizations.

■ When courts review administrative agency decisions, they give great deference to agency determinations. In considering whether the Secretary's final decision is arbitrary and capricious or an abuse of discretion, the Secretary's decision will be upheld unless he failed to consider all relevant factors and articulate a rational connection between the facts found and the choice made. *Baltimore Gas & Elec. Co.,* 462 U.S. at 105, 103 S.Ct. at 2256; *Citizens to Preserve Overton Park,* 401 U.S. at 419–20, 91 S.Ct. at 824–25; *SEC v. Chenery Corp.,* 332 U.S. 194, 196–97, 67 S.Ct. 1575, 1577–78, 91 L.Ed. 1995 (1947). Courts will not supply reasons where an agency has failed to set forth the grounds for its action. *Chenery Corp.,* 332 U.S. at 196–97, 67 S.Ct. at 1577–78. Although there may be grounds for the application of either set of cost principles to Action, this court cannot attribute to the Secretary appropriate reasons for his decision. His failure to give reasons for applying the cost principles for state and local governments rather than the cost principles for nonprofit organizations renders his decision arbitrary and capricious. We remand with instructions to the Secretary to determine the appropriate cost principles to be applied to Action and to set forth reasons for his conclusion.[13]

---

10. Even where an issue was not raised at all before an agency, courts will consider it on appeal if applicable statutes and regulations provide for independent consideration by the agency of issues not raised by a petitioner. *Page v. Donovan,* 727 F.2d 866, 868 (9th Cir.1984). The *Page* case involved judicial review of an administrative decision under the Redwood National Park Expansion Act. The petitioner raised on appeal to the court an issue not raised before the Secretary. The court found that petitioner had not waived the argument because applicable regulations both allowed petitioner to appeal from an adverse decision without specifying the error for which reversal was sought and directed the Assistant Secretary, when hearing an appeal, to determine whether an error was made regardless of whether the error was alleged by the petitioner.

11. The CETA regulations incorporate government-wide cost principles from the Public Con-

tracts context. The government-wide cost principles vary depending upon the type of organization receiving the funds. 29 C.F.R. § 98.-12(a) provides that " ... Federal funds granted under the Act may be expended only for purposes permitted under the provisions of Part 1–15 of Title 41 of the Code of Federal Regulations; 41 C.F.R. 1–15.2 which applies to commercial and nonprofit organizations; 41 C.F.R. 1–15.3 which applies to educational institutions; and 41 C.F.R. 1–15.7 which applies to State and local governments...."

12. In the hearing before the ALJ, it was disputed whether the Cleveland County Industrial Authority building is public or private. The ALJ's decision that it is a public building is not challenged in this appeal.

13. Under the cost principles for state and local governments, a recipient is entitled to a depreciation allowance. If the Secretary determines

## III.

Action contests the Secretary's disallowance of costs for job services provided for three participants.

### A.

The Secretary disallowed Action's costs for participants Brummett and Rowland because they did not meet the income requirement and therefore were ineligible to participate in CETA programs. CETA grantees are required to determine eligibility pursuant to procedures set out in the CETA regulations. 20 C.F.R. § 676.75–3. The regulations provide for three checks of participant eligibility. CETA grantees initially determine eligibility from information supplied on a participant's application forms. This procedure is "self-certifying"; the information provided by the applicant is accepted as true by the grantee. Next, within thirty days of enrolling an applicant, the grantee must review the application for completeness and accuracy of the eligibility determination. During this second check, the grantee is not required to seek independent verification of information in the application. Finally, on a quarterly basis, the grantee must verify a sample of the applications of participants enrolled during the quarter. It is only at this stage that the regulations mandate documentation of information in the application.

Action accepted Brummett and Rowland as participants in the County's CETA Summer Youth Employment Program. Action evaluated their applications, determined they were eligible, and enrolled them in the program. Both applications were reviewed within thirty days; the reviews confirmed the participants' eligibility. Although Action performed a quarterly review as required by the regulations, neither Brummett's nor Rowland's application was included in the sample selected for review. In the interest of improving its procedures, Action later undertook a review similar to the quarterly review of *all* its applications. It was during this voluntary review that Action received documentation of family income indicating that Brummett and Rowland were ineligible. Rowland was no longer in the program at that time. Action terminated Brummett's participation and sent letters to both families requesting repayment.

The Secretary disallowed Action's costs for Brummett and Rowland on the basis that they were ineligible to participate in the youth employment program. Action concedes that these participants were ineligible but claims that the costs should be allowed under 20 C.F.R. § 676.88(c), which gives Grant Officers discretion to allow some costs that normally would be disallowed. A Grant Officer may allow costs associated with ineligible participants when five factors are present:

(1) The activity was not fraudulent and the violation did not take place with the knowledge of the recipient or subrecipient; and

(2) Immediate action was taken to remove the ineligible participant; and

(3) Eligibility determination procedures, or other such management systems and mechanisms required in these regulations, were properly followed and monitored; and

(4) Immediate action was taken to remedy the problem causing the questioned activity or ineligibility; and

(5) The magnitude of questioned costs or activities is not substantial.

20 C.F.R. § 676.88(c).

The Grant Officer assigned to Action's case stated that he was unable to allow the costs for Brummett and Rowland because all five requisites had not been met. The ALJ affirmed the Grant Officer's ruling, stating that the record supports the Grant Officer's decision not to allow the costs because Action failed to follow and monitor eligibility determination procedures. Neither the Grant Officer nor the ALJ specified in what way the eligibility procedures and determinations were improperly followed and monitored.

that these cost principles apply to Action, Action should be granted any depreciation allowance amounts it can demonstrate. The Secretary

concedes that Action should be allowed these costs. Respondent's Brief at 19.

As we have pointed out, courts give great deference to agencies' factual determinations. In this case, the only factual finding regarding the applicability of 20 C.F.R. § 676.88(c) is the conclusory statement that the eligibility determination procedures were not properly followed and monitored. The DOL did not specify which procedures Action failed to follow, nor did it point to any evidence in the record to support its conclusion. In fact, it appears from the record that there is evidence to support the conclusion that all five requisites for allowing normally disallowed costs are present. Action apparently complied with the procedures required in the regulations; it undertook more extensive review on its own initiative to insure that participants were eligible; when it identified ineligible participants, it eliminated them from its youth employment program and attempted to obtain repayment; there was no fraud on Action's part; and the amount of the costs in question is not substantial.

■ 20 C.F.R. § 676.88(c) seems to be designed for the type of situation presented here. Action went further than it was required by law in attempting to insure federal funds were spent only on eligible individuals. Action's extra diligence uncovered the ineligible participants. The DOL's failure to exercise its discretion to allow costs for these participants will only serve to discourage this sort of extra diligence on the part of grantees. There may be considerations which would explain a decision not to exercise discretion to allow these costs, or there may be facts to support the conclusion that the eligibility procedures and determinations were not properly followed and monitored. The DOL, however, failed to detail such considerations, set forth any supporting facts, or explain its decision. We remand with instructions to the Secretary to consider application of this regulation and to set forth reasons for his conclusion.

**B.**

Action accepted Hauck as a participant in a CETA program on the basis that she was unemployed. According to the DOL's audit report, information in her application indicated that she did not qualify as unemployed. DOL therefore disallowed costs for her CETA participation. Action concedes that Hauck was ineligible as unemployed, but contends that she qualified for the program as an underemployed individual. A person is underemployed for CETA purposes if she is a member of a family whose income in relation to family size does not exceed the poverty level and she is working full-time or she is working part-time and seeking full-time work. 29 C.F.R. § 94.4(fff)(2).

■ The party requesting a hearing before an ALJ has the burden of establishing the facts entitling it to the requested relief. 20 C.F.R. § 676.90(b). Thus, Action had the burden of showing that Hauck was eligible as underemployed. The Secretary found that Action did not establish that Hauck's family income was below the poverty level as required in the regulations, and the record supports this conclusion. We affirm the decision of the Secretary.

**IV.**

Action argues that CETA requires the Secretary to consider whether Action should be required to repay the disallowed costs. The Secretary has the discretion to waive repayment of disallowed costs based on equitable considerations. 29 U.S.C. § 816(d)(2);[14] see *Quechan Indian Tribe,* 723 F.2d at 736–37. The Secretary did not respond to Action's request that recoupment of the disallowed costs be waived.

■ Because waiver of recoupment is within the Secretary's discretion, the Secretary need not address this issue in every case before him. The Secretary is not required to respond to every frivolous or unsupported argument that he should exer-

---

**14.** 29 U.S.C. § 816(d)(2) provides that the Secretary should order repayment for violations of certain sections of the Act "unless, in view of special circumstances as demonstrated by the recipient, the Secretary determines that requiring repayment would not serve the purposes of attaining compliance with such sections."

cise his discretion to waive repayment of disallowed costs. In this case, however, Action argued before the Secretary that costs for Brummett and Rowland, which normally would be disallowed, should be allowed under 20 C.F.R. § 676.88(c). This argument also presented substantial equitable considerations. Where such a substantial argument for exercise of discretion to waive repayment is made, the Secretary must respond setting forth the reasons for his exercise or lack of exercise of discretion. See *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 48–49, 103 S.Ct. 2856, 2869–2870, 77 L.Ed.2d 443 (1983); see also *Baltimore Gas & Elec. Co.*, 462 U.S. at 105, 103 S.Ct. at 2256. We remand with instructions to the Secretary to consider whether recoupment of the disallowed costs for participants Brummett and Rowland should be waived on the basis of equitable considerations.

Action's arguments regarding the disallowances for rent and the costs for participant Hauck do not present similar equitable considerations. The Secretary was not required to consider waiving recoupment of the disallowed costs for Hauck. Similarly, if the Secretary finds on remand that Action's rent payments should be disallowed, he is not required to consider waiving recoupment of those payments on equitable grounds.

### V.

Finally, Action argues that any costs ultimately disallowed should be repaid by the County. The Decision and Order of the ALJ ordered Action, the subgrantee, to pay the amount owing to DOL. The Final Determination of the Grant Officer, however, was addressed to Joe Small, Executive Director, Cleveland County Board of County Commissioners. Action asserts that a remand is necessary to determine whether Action or the County should be responsible for repayment of the disallowed costs.

Under CETA, either or both entities may be held liable for repayment of misspent funds. 29 U.S.C. § 816(d)(1); *Kentucky v. Donovan*, 704 F.2d 288 (6th Cir. 1983); *Milwaukee County v. Peters (Unit-*

*ed States Dep't of Labor,*) 682 F.2d 609 (7th Cir.1982). The language of the ALJ's Decision and Order is ambiguous. It affirms the Grant Officer's Final Determination, which is addressed to Cleveland County, yet it orders Action to pay the disallowed costs. We remand to the Secretary for clarification of the allocation of liability.

AFFIRMED IN PART; VACATED AND REMANDED IN PART.